James C. Mahan
U.S. District Judge

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRADLEY SUMMERS and MICHELLE SUMMERS, | Case No. 2:15-CV-1239 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| MCWANE, INC., | |
| Defendant(s). | |

Presently before the court is defendant McWane, Inc.'s ("McWane") motion for summary judgment. (ECF No. 43). Plaintiffs Bradley Summers ("Summers") and Michelle Summers (collectively "plaintiffs") filed a response. (ECF No. 48). McWane did not file a reply and the time to do so has passed.

Also before the court is Bradley's motion for partial summary judgment. (ECF No. 44). McWane filed a response. (ECF No. 49). Bradley did not file a reply and the time to do so has passed.

Also before the court is Bradley's motion for partial summary judgment. (ECF No. 45). McWane filed a response. (ECF No. 50). Bradley did not file a reply and the time to do so has passed.

**I.  Facts**

This is a products liability case involving a fire hydrant that unexpectedly shot out a bolt and severely injured the eye of a maintenance worker. (ECF No. 1.).

McWane designed the Clow Medallion hydrant in the mid 1980's and had approximately two million units manufactured. (ECF Nos. 43, 44). One of those fire hydrants was installed at the Mazda-Kia Dealership at 260 North Gibson Road, Henderson, Nevada. (ECF No. 44).

On January 8, 2014, Michael Anderson went to the Mazda-Kia dealership to service several fire hydrants, including the Clow Medallion hydrant at issue. (ECF No. 43). After Anderson completed his work, he unsuccessfully attempted to shut off water flow to the hydrant. (ECF No. 44-3). Anderson decided to return the following day to disassemble the hydrant and determine the source of the malfunction. *Id*.

On January 9, 2014, Summers went Anderson to the Mazda-Kia dealership to provide assistance. (ECF No. 44-4). Summers and Anderson initially disassembled various parts of the hydrant and discovered an indentation in the main valve seat, which is a circular rubber pad that prevents water flow in the hydrant under certain conditions. *Id*. Summers and Anderson installed a new valve seat and re-assembled the hydrant. *Id*. However, after conducting various tests, the maintenance workers observed that water was improperly flowing out of the hydrant. *Id*.

Summers and Anderson decided that they needed to disassemble the hydrant again and locate the source of the leak. *Id*. Anderson shut off the water to the hydrant. *Id*. Summers then began twisting a weather cap on the top of the hydrant with a large wrench so that he could remove a bolt that screws into the cap. *Id*. Removing the bolt and weather cap is necessary to disassemble the hydrant.

After about 15 turns, Summers used a pair of channel locks to loosen the bolt to a point where he can finish unscrewing the bolt with his hand. *Id*. When Summers began removing the bolt by hand, it suddenly shot out from the weather cap and struck Summers in the face near his right eye. *Id*. Summers was not wearing safety glasses at the time of the incident. (ECF Nos. 43).

Immediately after the impact, Summers began to bleed from his face near his eyebrow. (ECF No. 44-4). Summers was unable to see with his right eye and eventually went to Summerlin Hospital for retinal surgery. (ECF Nos. 44, 44-4). Over the next three years,

Summers underwent six additional eye surgeries and received eye injections to help him regain vision. (ECF No. 45). Because these treatments were unsuccessful, Summers had his eye removed on August 15, 2017. *Id*.

On June 6, 2015, plaintiffs initiated this action in state court, asserting two causes of action: (1) strict products liability; and (2) loss of consortium. (ECF No. 1). On July 1, 2015, McWane removed this case to federal court. *Id*.

Now, McWane moves for summary judgment on plaintiffs' strict products liability claim. (ECF NO. 43). Plaintiffs also move for summary judgment on seven affirmative defenses and two elements of their strict products liability claim.

## II.  Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

| 1 | By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

. . .

. . .

### III. Discussion

Before the court are three motions. First, the court will deny McWane's motion for summary judgment because there is a genuine factual dispute pertaining to the allegedly defective design of the Clow Medallion fire hydrant. Second, the court will grant in part and deny in part plaintiffs' motion for partial summary judgment on McWane's affirmative defenses. Third, the court will grant in part and deny in part plaintiffs' motion for summary judgment on the final two elements of Summers' strict products liability claim.

*a. Strict Products liability*

McWane argues that the court should enter summary judgment because plaintiffs' cannot meet their burden to prove that the fire hydrant has a defective design. (ECF No. 43). The court disagrees.

To prevail on a claim for strict products liability, a plaintiff must show that (1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury. *Fyssakis v. Knight Equipment Corp.*, 826 P.2d 570, 571 (Nev. 1992) (citations omitted).

A product is defective when it is "dangerous because [it] fail[s] to perform in the manner reasonably expected in light of [its] nature and intended function." *Allison v. Merck & Co.*, 878 P.2d 948, 952 (Nev. 1994); *see also Phillips v. C.R. Bard, Inc.*, No. 3:12–cv–00344–RCJ, 2014 WL 7177256, at *8 (D. Nev. Dec. 16, 2014) ("[T]he *Allison* opinion makes clear that the Nevada Supreme Court does not particularly care whether [a defect] is characterized as a manufacturing defect or a design defect.").

Plaintiffs' expert, Frank Perez, explained in his deposition testimony that the Clow Medallion hydrant unusually contains a through hole and bolt on the top of the weather cap, which can allow internal pressure to build up and eject the bolt at a high speed. (ECF No. 48-3). Perez further explained that another fire hydrant, the Centurion, does not risk ejecting a bolt at a high speed because it does not have a through hole and bolt on the top of the weather cap. *Id*. Thus, Perez's expert testimony substantially supports plaintiffs' claim that the Clow Medallion hydrant has a defective design and that there is a reasonable alternative design.

James C. Mahan
U.S. District Judge

- 5 -

McWane has brought evidence in an attempt to refute plaintiffs' expert, such as having its corporate representative testify that approximately two million Clow Medallion hydrants have been manufactured, none of which have caused an injury due to its design. (ECF No. 43). Although McWane's evidence is probative, it does not allow the court to enter judgment as a matter law because Perez's testimony creates a genuine dispute of material fact. Accordingly, the court will deny McWane's motion for summary judgment.

### b. Affirmative defenses

Plaintiffs request that the court enter summary judgment on McWane's fourth, fifth, sixth, seventh, ninth, tenth, and twelfth affirmative defenses. (ECF No. 44). The court hereby addresses each in turn.

#### i. Fourth affirmative defense

McWane's fourth affirmative defense is that the court should proportionately reduce McWane's liability pursuant to the doctrine of comparative negligence. (ECF No. 8). McWane concedes that the doctrine of comparative negligence does not apply to strict product liability claims. (ECF No. 49). Accordingly, the court will grant plaintiffs' motion with respect to McWane's fourth affirmative defense.

#### ii. Fifth affirmative defense

McWane's fifth affirmative defense is that Summers assumed the risk of injury when he conducted maintenance work on the fire hydrant. (ECF No. 8).

Assumption of risk is a defense to strict products liability. *Cent. Tel. Co. v. Fixtures Mfg. Corp.*, 738 P.2d 510, 512 (Nev. 1987) (per curiam) (citations omitted). A defendant "must show (1) that the plaintiff actually knew and appreciated the risk or danger created by the defect, (2) that the plaintiff voluntarily encountered the risk while realizing the danger, and (3) that the plaintiff's decision to voluntarily encounter the known risk was unreasonable." *Id*. (citation omitted).

Summers testified at his deposition that at the time of the incident he had approximately eighteen years of experience as a technician and that he had serviced fire hydrants similar to the Clow Medallion for at least six years. (ECF No. 43). This testimony supports McWane's claim

that Summers appreciated the risk of servicing a Clow Medallion hydrant. However, the reasonableness of Summers' alleged assumption of risk is a triable issue for the fact-finder. Accordingly, the court will not enter summary judgment on McWane's fifth affirmative defense.

### iii. Sixth and seventh affirmative defenses

McWane's sixth and seventh affirmative defenses are that the hydrant did not have a dangerous condition or a defect. (ECF No. 8). These defenses deny the first element of plaintiffs' strict products liability claim. *See Fyssakis*, 826 P.2d at 571. Because the parties have brought forth substantive evidence disputing whether the hydrant had an unreasonably dangerous condition, the court will not enter judgment as a matter of law on these defenses.

### iv. Ninth and tenth affirmative defenses

McWane's ninth and tenth affirmative defenses are that Summers' injury was caused by his failure to properly use, maintain, inspect, or disassemble the hydrant. (ECF No. 8).

McWane has failed to bring forth any evidence showing that Summers misused the hydrant other than stating that plaintiffs' account of the underlying events violates the laws of physics. *See* (ECF No. 43). Moreover, an honest reading of plaintiffs' motion for partial summary judgment confirms that the alleged malfunction was physically possible. *See* (ECF No. 44). Thus, because McWane has failed to produce competent evidence showing that Summers misused the hydrant, the court will grant summary judgment on the ninth and tenth affirmative defenses. *See Celotex*, 477 U.S. at 324.

### v. Twelfth affirmative defense

McWane's twelfth affirmative defense is that there was no obligation to warn because any danger in the hydrant was obvious. (ECF No. 8).

Under Nevada law, "strict liability may be imposed even though the product is faultlessly made if it was unreasonably dangerous to place the product in the hands of the consumer without suitable and adequate warning concerning safe and proper use." *Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245, 249 (Nev.2003). A "product is not unreasonably dangerous if everyone knows of its inherent dangers." *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005).

McWane has failed to bring forth evidence showing that there was an obvious risk that a bolt could eject from the hydrant at a high speed when the water to the hydrant was shut off. *See* (ECF Nos. 43, 49). In addition, McWane's representative confirmed that such a danger was not obvious by stating at his deposition that "a risk of the hex head bolt being forcefully ejected from the hydrant is certainly one that would never have come to mind in the design process." (ECF No. 44-14). Accordingly, the court will grant plaintiffs' motion for partial summary judgment as it pertains to the twelfth affirmative defense.

### c. Causation and Damages

Plaintiffs' have filed a motion for partial summary judgment requesting that the court hold (1) that the incident on January 9, 2018, caused Summers' injury and (2) the incident caused $333,237.32 in damages. (ECF No. 45). The court addresses each in turn.

#### i. Causation

To prove proximate cause in a strict products liability action, "the plaintiff must show that the design defect in the product was a substantial factor in causing his injury." *Price v. Blaine Kern Artista, Inc.*, 893 P.2d 367, 370 (Nev. 1995). "A plaintiff need not 'produce direct evidence of a specific product defect [or] negate any alternative causes of the accident.'" *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010) (citing *Stackiewicz v. Nissan Motor Corp.*, 686 P.2d 925, 927 (Nev. 1984)). "An 'unexpected, dangerous malfunction' suffices." *Id.* (citing Stackiewicz, 686 P.2d at 928).

The undisputed record shows that the fire hydrant directly caused Summers' injury by unexpectedly ejecting a bolt at a high speed. (ECF Nos. 43, 44-4). Accordingly, the court will grant plaintiffs' motion for summary judgment with respect to causation. *See Rowell v. Powerscreen Intern., Ltd.*, 808 F. Supp. 1459 at 1463 (D. Nev 1992) (holding that courts in Nevada look at the proximate cause of plaintiff's injuries, not the accident, and do not consider unforeseeable misuse).

#### ii. Damages

The court will not grant summary judgment on damages because plaintiffs have not attached to their motion any testimony, affidavits, or records showing the extent of Summers'

damages. *See C.A.R.*, 213 F.3d at 480 ("When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.").

**IV.    CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that McWane's motion for summary judgment (ECF No. 43) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment (ECF No. 44) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that plaintiffs' motion for partial summary judgment (ECF No. 45) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

DATED March 11, 2019.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**